# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| **EAST IOWA PLASTICS, INC.**  Plaintiff,  v.  **PI, INC.**  Defendant. | **CIVIL CASE No. 12cv2088-EJM**  **COMPLAINT**  (JURY TRIAL DEMANDED) |

East Iowa Plastics, Inc. ("EIP") for its Complaint seeking a declaratory judgment action and , further, asserting claims of trademark cancellation, violation of the Lanham Act, trademark misuse, infringement and unfair competition, trademark misappropriation and conversion, and breach of contract states:

## INTRODUCTION

1. This is an action seeking a declaration of rightful ownership of the mark, PAKSTER, pursuant to the provisions of 28 U.S.C. §2201. Further relief sought by this action includes permanent injunction relief, damages, and attorneys' fees for based upon PI's breach of contract, improper registration of the PAKSTER mark, and tortious efforts to misappropriate and convert EIP's ownership rights in the PAKSTER mark in violation of Section 38 of the Lanham Act, 15 U.S.C. § 1120, 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125; trademark misuse, infringement and unfair competition under the common

law of the United States and the State of Iowa; for trademark misappropriation and conversion under the laws of the State of Iowa; for breach of contract under the laws of the State of Iowa.

## THE PARTIES

2. EIP is a corporation organized and existing under the laws of Iowa with its principal offices located at 601 17th Street Southeast, Independence, Buchanan County, Iowa 50644.

3. PI, Inc. ("PI") formally did business as Plastic Industries, Inc., and is organized and existing under the laws of Tennessee with principal offices located at 213 Dennis St., Athens, Tennessee 37303.

4. PI operates a number of divisions in the manufacture and distributions of its various product lines. One such division is Hydra Pools Division which has a manufacturing and distribution facility located at 21822 Highway J46, Centerville, Iowa.

## VENUE AND JURISDICTION

5. This is a civil action for declaratory judgment of rightful ownership of the mark, PAKSTER, pursuant to the provisions of 28 U.S.C. §2201, and for improper, false or fraudulent registration of trademarks arising under the Trademark Laws of the United States, 15 U.S.C. §§ 1119-1120; for false or misleading representation of fact and unfair competition in violation of 15

U.S.C. § 1125(a); for trademark misuse, trademark misappropriation, infringement and unfair competition in violation of 15 U.S.C. § 1125(a) and under the common law of the United States and the State of Iowa; for conversion under the laws of the State of Iowa; for breach of contract under the laws of the State of Iowa.

6. Iowa is a large producer of eggs for human and other consumption and use. According to the Iowa Department of Agriculture, in 2011 there were 53,000,000 laying chickens in Iowa producing a total of 14.5 billion eggs. The value of the egg production in Iowa for 2011 was stated as $931,500,000. Appended as Attachment A is a copy of the 2011 data as distributed by the Iowa Department of Agriculture.

7. PI has exhibited at the Midwest Poultry Federation Convention over the past years, a convention which is traditionally held in the Minneapolis/St. Paul metropolitan area. On its website at http://www.pakster.com/index.html, PI advertised its participation prior to the 2012 convention, inviting farmers and others in the egg production industry, including those from Iowa, to visit its exhibit. Further, PI is registered to attend and exhibit at the Midwest Poultry Federation Convention in St. Paul on March 13-14, 2013.

8. On understanding, information and belief, PI markets and sells its PAKSTER branded plastic poultry products for use by egg production operations

located within Iowa and, further, has targeted Iowa in the sales of these plastic products for the poultry industry.

9. PI further advertises its PAKSTER branded products in Iowa and throughout the United States using the designation, ®, immediately behind the mark thereby stating to the consuming public that it is the rightful owner of the trademark, PAKSTER, and that the consumer is purchasing products from the rightful owner of said mark.

10. PI's conduct has resulted in harm and injury occurring in Iowa. In particular, PI's wrongful conduct includes its actions constituting a breach of contract, its false and misleading statements of fact regarding the mark, PAKSTER, and its tortious efforts to coerce and misappropriate EIP's ownership of the mark, PAKSTER.

11. The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) and (b), as the dispute contemplates, in part, federal questions arising under Section 43 of the Lanham Act, 15 U.S.C. §1125(a). The Court has subject matter jurisdiction over the related common law claims pursuant to the Court's ancillary and supplemental jurisdiction under 28 U.S.C. § 1367. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, exclusive of interests and costs, and is between citizens of different states and, further, because PI has intentionally directed its actions to this district by

undertaking the conduct alleged below and caused injury to EIP, the brunt of which it knew or should have known would be suffered in this District.

12. Venue is proper under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

13. In the 1990s, ABT Building Products Corp. of Neenah, Wisconsin, owned a subsidiary corporation named KenTech Plastics, Inc.

14. KenTech Plastics, Inc., owned and operated a business which manufactured various plastic products.

15. One of the manufacturing operations of KenTech Plastics, Inc., was located in Independence, Iowa, whereat it manufactured thermoform molded plastic products, and sold various of these products throughout the United States under the mark, PAKSTER.

16. KenTech Plastics, Inc., also owned a manufacturing operation in Hopkinsville, Kentucky, whereat it manufactured injection molded plastics products, certain of which were sold under the mark, PAKSTER.

17. In 1997, ABT Building Products Corp. advised the City of Independence and its economic development personnel of its intention to close KenTech Plastics' operation in Iowa which would result in the elimination of a number of jobs unless a buyer could be found.

18. Ultimately, Bret and Jean Kivell stepped forward, formed EIP, and through the corporation purchased the Iowa operation of KenTech Plastics Inc.

19. The sale closed on or about October 31, 1997.

20. Documentation related to this sale included an Asset Purchase Agreement, a copy of which is appended as Attachment B, and a License Agreement, a copy of which is appended as Attachment C.

21. The License Agreement was a part of the Asset Purchase Agreement, and stated:

> Buyer and Seller are parties to an Asset Purchase Agreement dated as of October 31, 1997 (the "Agreement) providing for, among other things, the transfer by Seller to Buyer of all of the Seller's right, title and interest in and to the "Pakster" trade name and mark. It is a condition precedent to Seller's obligations under the Agreement that Buyer execute and deliver this License Agreement.

22. As a part of the closing, the License Agreement was executed by both EIP and KenTech Plastics, Inc.

23. Paragraph 1 of the License Agreement in material part granted KenTech Plastics, Inc., a license to use mark, PAKSTER, "in conjunction with the production and sale of injection molded plastic products".

24. After October 31, 1997, EIP has continuously manufactured and sold thermoform molded plastics products under the mark, PAKSTER. Appended as Attachment D is a printout of its website wherein its use of the mark, PAKSTER, in the sale of plastic poultry products is demonstrated.

25. After October 31, 1997, KenTech Plastics, Inc. continued to manufacture and sell injection molded plastic products under the mark, PAKSTER.

26. On information and belief, at a point in time after Later, ABT Building Products Corp. by way of its subsidiary, KenTech Plastics, Inc., sold its injection molded plastic products operation to PI.

27. On information and belief, as a part of this sale to PI, KenTech Plastics, Inc. assigned its rights in the License Agreement, Attachment C.

28. Following the sale of the injection molded plastics business to PI, both PI and EIP were represented by the same manufacturer's representative.

29. For a few years thereafter, both PI and EIP would share a booth at trade shows whereat they would each display and market their plastic products under the mark, PAKSTER.

30. During the time that both PI and EIP would display and market under the PAKSTER mark using the same booth at trade shows, they had no overlapping products which were offered under said mark.

31. On information and belief, there is only one overlapping product which is offered for sale by both PI and EIP under the PAKSTER mark which product is known as an egg tray.

32. Unknown to EIP, on August 25, 2007, PI filed an application with the United States Patent and Trademark Office to register the mark, PAKSTER, resulting in issuance of Registration No. 3352460 on December 11, 2007, which registration covers goods and services consisting of chicken coops, plastic containers and boxes for commercial use in the processing and handling of

food and livestock, and trays for commercial use in the processing and handling of food and livestock.

33. Unknown to EIP, on August 4, 2008, PI filed an application with the United States Patent and Trademark Office to register the design & word mark, PAKSTER, resulting in issuance of Registration No. 3724368 on December 15, 2009, which registration covers goods and services consisting of chicken coops, plastic containers and boxes for commercial use in the processing and handling of food and livestock, and trays for commercial use in the processing and handling of food and livestock.

34. On or about January 27, 2012, EIP received correspondence submitted on behalf of PI asserting that PI was the owner of the mark, PAKSTER; possessed sole right to use the mark and, further, that EIP's use of the mark constituted trademark infringement and dilution. A copy of this correspondence is appended as Attachment E.

35. On March 5, 2012, a written response to the claims of PI was submitted, a copy of which is appended as Attachment F. In this response, EIP advised PI of the Asset Purchase Agreement and of the License Agreement, providing a copy of same. Further, EIP stated that it was the rightful owner of the mark, PAKSTER.

36. On or about April 3, 2012, a response was delivered on behalf of PI which dismissed the contractual documentation provided, continuing to assert that

EIP's use of the mark, PAKSTER, was in violation of federal law. A copy of this correspondence is appended as Attachment G.

37. On April 20, 2012, further response was provided on behalf of EIP advising that it disagreed with the position and analysis of PI. A copy of this correspondence is appended as Attachment H.

38. During the intervening months, EIP and PI discussed potential business resolutions of these issues, but were not successful.

39. By letter dated December 4, 2012, PI resurrected these issues advising that unless EIP agreed to discontinue its use of the mark, PAKSTER, PI would take further legal steps. A copy of this correspondence is appended as Attachment I.

## COUNT I
**Cancellation of Registrations and Damages under 15 U.S.C. §§ 1119 and 1120**

40. EIP hereby repeats and realleges each of the above paragraphs as if set forth fully herein.

41. On information and belief, any rights to the PAKSTER mark obtained and held by PI derived from its acquisition of the molded plastic products business from KenTech Plastics, Inc. and/or ABT Building Products Corp.

42. The rights held by KenTech Plastics, Inc. and/or ABT Building Products Corp. in the mark, PAKSTER, as a licensee.

43. The PAKSTER mark was owned by EIP.

44. EIP had granted a limited license to the mark, PAKSTER, to KenTech Plastics, Inc., which license rights were transferrable pursuant to the provisions of ¶3 of the License Agreement.

45. As a licensee of the mark, PAKSTER, PI could not rightfully claim to possess the ownership interest in the mark, which ownership interest is a condition precedent to filing and obtaining a valid trademark registration from the United States Patent and Trademark Office.

46. On information and belief, at the time of filing and prosecution of the trademark application that matured into Registration No. 3352460, PI was knowledgeable of its acquisition of the limited rights to use the mark, PAKSTER, and falsely or fraudulently represented itself to be the owner of the mark or by other false means obtained said registration.

47. On information and belief, at the time of filing and prosecution of the trademark application that matured into Registration No. 3724368, PI was knowledgeable of its acquisition of the limited rights to use the mark, PAKSTER, and falsely or fraudulently represented itself to be the owner of the mark or by other false means obtained said registration.

48. At no time after issuance of Registration No. 3724368 and Registration No. 3352460 did PI submit information about the License Agreement or the limited grant of rights as a licensee that PI held to the mark, PAKSTER, which constitutes a continued act of falsity.

49. Even nine (9) months after receiving an executed copy of the Asset Purchase Agreement and the License Agreement, PI has still failed to take corrective action or otherwise inform the United States Patent and Trademark Office as to its limited rights as a licensee to the mark, PAKSTER.

50. The conduct of PI, particularly including but not limited to its latest attempts at seeking to separate EIP from its rightful ownership of the PAKSTER mark, constitutes misuse which serves as an additional basis for cancellation of Registration No. 3724368 and Registration No. 3352460.

51. EIP has been harmed, and will continue to be harmed by PI's continued representations and actions that it has received proper and valid registrations from the United States Patent and Trademark Office regarding the PAKSTER mark resulting in damages under 15 U.S.C. § 1120.

52. The District Court is empowered to cancel registrations pursuant to the provisions of 15 U.S.C. § 1119, and should act to cancel Registration No. 3724368 and Registration No. 3352460.

## COUNT II
### False Statements and Unfair Competition under 15 U.S.C. § 1125(a)

53. EIP hereby repeats and realleges each of the above paragraphs as if set forth fully herein.

54. PI's acts pertaining to the PAKSTER mark misrepresent its ownership interest in the mark.

55. On information and belief, PI's authorization to use the PAKSTER mark derived solely from the License Agreement which was assigned, actually or impliedly to PI by KenTech Plastics, Inc. at the time that PI acquired the injection molded plastics parts business.

56. The acts of PI in filing and obtaining Registration No. 3352460 and Registration No. 3724368 from the United States Patent and Trademark Office were based upon false and misleading statements or representations of fact as to ownership rights of PI in the mark.

57. PI has marketed its products with reference to Registration No. 3352460 and Registration No. 3724368 thereby stating to the consuming public that it held the right to and did manufacture and sell its plastic products, not limited to injection molded products, as PAKSTER branded products.

58. PI's misrepresentation of fact, threats and coercion, including its improper use of the trademark registrations in seeking to have EIP relinquish and divest its lawful rights in the PAKSTER mark are wrongful.

59. Further, PI's acts of seeking and obtaining Registration No. 3352460 and Registration No. 3724368 from the United States Patent and Trademark Office are contrary to the provisions of ¶4 of the License Agreement rendering it void thereby removing any authorization to PI to use the PAKSTER mark, with all production and sale of plastic products by PI thereafter constituting an improper and infringing use of the PAKSTER mark.

60. Each of these acts by PI constitutes a violation of 15 U.S.C. § 1125(a).

61. The conduct of PI complained of herein has caused substantial and irreparable damage to EIP, and will continue to cause further irreparable damage to EIP if PI is not permanently enjoined by this Court from further violations of EIP's rights.

## COUNT III
### Trademark Infringement, Misappropriation, Misuse and Unfair Competition under 15 U.S.C. § 1125(a) and the Common Law

62. EIP hereby repeats and realleges each of the above paragraphs as if set forth fully herein.

63. Since PI's actions have resulted in its loss of any right to use of the PAKSTER mark, its use and continued use of the mark is likely to cause confusion, to cause mistakes, or to deceive as to the affiliation, connection, or association of PI with EIP, or as to the origin, sponsorship, or approval of PI's goods and services.

64. PI's seeking and obtaining registration of the PAKSTER mark in Registration No. 3352460 and Registration No. 3724368 from the United States Patent and Trademark Office constitutes unfair acts and a misuse of the PAKSTER mark owned by EIP.

65. PI advertises its plastic poultry products under the PAKSTER mark using the designation, ®, thereby telling the consuming public that it is the true and

rightful owner of the mark and, further, that its products are genuine PAKSTER products.

66. PI's misrepresentation of facts, threats and coercion, including its improper use of the trademark registrations in seeking to have EIP relinquish and divest its lawful rights in the PAKSTER mark are wrongful, and constitute acts of misappropriation, unfair competition and misuse.

67. EIP is damaged by these wrongful acts of PI and said damage will continue into the future, all in violation of the common law of the United States and the State of Iowa.

68. PI's continued improper use of the PAKSTER mark and its improper actions will continue to the harm of EIP, unless PI is permanently enjoined by this Court from further violation of EIP"s rights.

**COUNT IV**
**Conversion**

69. EIP hereby repeats and realleges each of the above paragraphs as if fully set forth herein.

70. The foregoing stated wrongful actions by PI form the basis for this claim of conversion.

71. These wrongful actions include PI's seeking and obtaining registration of the PAKSTER mark in Registration No. 3352460 and Registration No. 3724368,

which actions alone constitute a conversion of the PAKSTER mark owned by EIP.

72. These wrongful actions also include PI's misrepresentation of facts, threats and coercion, including its improper use of the trademark registrations in seeking to have EIP relinquish and divest its lawful ownership and rights in the PAKSTER mark.

73. Further, these wrongful acts include PI's disregard and breach of ¶4 of the License Agreement, including all actions in derivation thereof.

74. EIP is damaged by these wrongful acts of PI and said damage will continue into the future, all in violation of the common law of and the State of Iowa.

75. PI's wrongful conduct will continue to the harm of EIP, unless PI is permanently enjoined by this Court from further violation of EIP"s rights.

## COUNT V
## Breach of Contract

76. EIP hereby repeats and realleges each of the above paragraphs as if fully set forth herein.

77. On information and belief, PI obtained all right and interest in the use of the PAKSTER mark under the License Agreement.

78. The actions of PI in seeking and obtaining trademark registrations on the mark, PAKSTER, as reflected by Registration No. 3724368 and Registration No. 3352460, and in engaging in actions whereby it seeks to deprive EIP of its

rightful ownership in the mark by coercion and intimidation all constitute material breaches of the permitted uses provisions as contained within ¶4 of the License Agreement.

79. Due to the material breaches of the License Agreement by PI, the License Agreement is void and PI therefore has no legal rights in the mark, PAKSTER.

80. In the alternative, should the License Agreement not be determined to be void, it should be terminated due to the material breaches by PI with PI thereafter holding no legal rights in the mark, PAKSTER.

## COUNT VI
### Declaratory Judgment - 28 U.S.C. §2201

81. EIP hereby repeats and realleges each of the above paragraphs as if fully set forth herein.

82. EIP further seeks a declaratory judgment from the Court as to all issues asserted herein.

83. Specifically, EIP seeks that the Court declare as follows:

    a. EIP is the sole and proper owner of the mark, PAKSTER.

    b. IP held and currently holds no right in the mark, PAKSTER, aside from that of a licensee.

    c. The License Agreement whereby PI obtained its rights in the mark, PAKSTER, is void based upon its material breaches.

d. The License Agreement whereby PI obtained its rights in the mark, PAKSTER, is cancelled based upon the material breaches of PI.

   e. IP has committed fraud on the United States Patent and Trademark Office related to the procurement of Registration No. 3724368 and Registration No. 3352460.

   f. Registration No. 3724368 and Registration No. 3352460 are cancelled or, in the alternative, should be transferred to EIP as relates to the word mark, PAKSTER.

**PRAYER FOR RELIEF**

WHEREFORE, East Iowa Plastics, Inc., hereby demands judgment in its favor and against PI, Inc. as follows:

A. Entry of a judgment that finds Defendant has infringed EIP's trademark rights and has engaged in unfair competition under 15 U.S.C. § 1125(a) and the laws of the state of Iowa.

B. Entry of a Judgment of Declaration that EIP is the sole and rightful owner of the mark, PAKSTER, used in conjunction with plastic products.

C. Entry of a Judgment PI, its officers, directors, agents, attorneys, servants, employees, successors, and assigns, and all other persons in active concert or participation with them, and all those acting under the authority of or in privity with PI, are permanently enjoined from

using in any manner whatsoever the mark, PAKSTER, or any confusingly similar configuration as a trademark to advertise, promote, or identify the source of its goods.

D. Entry of an Order whereby PI is required to remove all advertisements, promotions, displays, packaging, price lists, catalogs, publications, and articles, or any other materials in its possession or in control of any of its agents, which bear or represent in any way a copy, simulation, colorable imitation, reproduction, photograph, copy, or similar device that is confusingly similar to the mark, PAKSTER.

E. Entry of an Order whereby PI is required to account for and pay over to EIP compensatory damages consisting, at least, of all earnings, profits, receipts and advantages derived by PI through the marketing of goods in association with the unlawful acts alleged herein;

F. Entry of an Order whereby Trademark Registration No. 3724368 and Trademark Registration No. 3352460 are cancelled or, in the alternative, directing that PI execute all documents and undertake all actions required to assign said registrations to EIP.

G. Entry of an Order whereby PI is required to pay EIP compensatory damages in a sum equal to three (3) times the amount of EIP's actual damages pursuant to 15 U.S.C. § 1117;

H. Entry of an Order whereby EIP is awarded its costs, expenses, and attorneys' fees for bringing and prosecuting this action; and

I. Entry of an Order whereby EIP is awarded such other and further relief as this Court may deem just and proper.

## JURY DEMAND

East Iowa Plastics, Inc. demands a jury trial on all issues triable by jury.

Date: December 10, 2012

/s/ Glenn Johnson
GLENN JOHNSON (AT0003856)
NYEMASTER GOODE, PC
625 First Street SE, Suite 400
Cedar Rapids, IA 52401
Telephone: 319.286.7000
Facsimile: 319.286.7050
Email: gjohnson@nyemaster.com

ATTORNEY FOR EAST IOWA PLASTICS, INC., PLAINTIFF