IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

EAST IOWA PLASTICS, INC.

        Plaintiff,

vs.

PI, INC.,

        Defendant.

No. C12-2088

RULING ON MOTION TO COMPEL

---

## TABLE OF CONTENTS

I.    *INTRODUCTION* ........................................ 1

II.   *PROCEDURAL HISTORY* ................................. 2

III.  *RELEVANT FACTS* ..................................... 2

IV.  *DISCUSSION* ......................................... 3
     *A.*   *Waiver* ........................................ 3
     *B.*   *Sales Reports* ................................. 6
     *C.*   *Tax Returns* .................................. 11

V.    *ORDER* ............................................. 13

## I.  INTRODUCTION

This matter comes before the Court on the Motion to Compel (docket number 52) filed by Plaintiff East Iowa Plastics, Inc. ("EIP") on May 2, 2014, and the Resistance (docket number 63) filed by Defendant PI, Inc. ("PI") on May 15. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

On December 10, 2012, EIP filed a complaint against PI, asserting PI's unlawful use of EIP's "PAKSTER" trademark. EIP seeks declaratory judgment, a permanent injunction, and monetary damages. PI answered on January 30, 2013, denying the material allegations and asserting that it is EIP who is unlawfully using the PAKSTER mark.

On March 12, 2013, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Among other things, the Court established a March 1, 2014 deadline for completion of discovery, with a September 1, 2014 trial ready date. The deadline for completion of discovery was subsequently extended to April 18, 2014.

On February 25, 2014, EIP filed a motion to compel, claiming PI had failed to fully comply with EIP's discovery requests. The motion came on for hearing on March 12. Following the hearing, the parties reached an agreement regarding the requested discovery and EIP subsequently withdrew its motion to compel.

On May 2, 2014, both parties filed motions for summary judgment. Those motions are currently pending before Judge Edward J. McManus. Also on May 2, EIP filed the instant motion to compel.

## III. RELEVANT FACTS

On January 29, 2014, EIP served PI with a second set of document production requests. In Request No. 73, EIP asked PI to produce "[a]nnual reports, summary sales reports or other documentation showing the sum total sales of PI, Inc. for 2012 and for 2013," including sales broken down by PI's eight "divisions or product categories." Request No. 75 asks PI to provide its corporate income tax returns for 2012 and 2013.

On April 4, 2014, PI responded to EIP's second request for production of documents. PI objected to EIP's request for information regarding total sales, stating that the requested reports "are confidential, not relevant to the subject matter of the dispute,

and the request is not calculated to lead to the discovery of admissible information unless and until EIP can demonstrate a prima facie case for exemplary damages." PI also objected to the production of its corporate income tax returns on the same grounds.

## IV. DISCUSSION

In its instant motion to compel, EIP asks the Court to order PI to produce the materials described in Requests Nos. 73 and 75. EIP first argues that because PI failed to timely respond to the document request, PI has waived any objection it may otherwise have. PI denies any waiver, and argues that financial information regarding its products unrelated to the PAKSTER mark is not relevant unless EIP can establish a *prima facie* case for punitive damages. PI also argues that EIP has not made the necessary case for production of PI's income tax returns.

### A. Waiver

The Court will first address the issue of whether PI waived its right to object to production of the documents by failing to timely respond to the document request. FEDERAL RULE OF CIVIL PROCEDURE 34(a) permits a party to serve a document request within the scope of RULE 26(b). "The party to whom the request is directed must respond in writing within 30 days after being served." RULE 34(b)(2)(A). The response must either state that the document will be provided for inspection as requested, or state an objection to the request, including the reasons. RULE 34(b)(2)(B). Here, EIP served its second set of document production requests on January 29, 2014. Accordingly, PI was required to respond, including stating any objection to the request, not later than March 3, 2014. PI did not respond until April 4, some 32 days later.

In its response to EIP's discovery requests, PI recognized that its objections were untimely.

> PI requests that its objection be deemed timely on the following grounds: The Request was originally served on prior counsel for PI. The responses were due on March 3,

3

2014.  Although the request was timely forwarded to the undersigned, the undersigned did not calendar the response due date.  By telephone the undersigned notified counsel for EIP of the error on March 13 and requested additional time to lodge objections.  On March 13, the undersigned emailed the notice of PI's objection.

PI's Responses to EIP's Second Request for Production of Documents (docket number 52-3) at 2-3.

In response to the instant motion to compel, PI offers additional detail regarding its failure to timely respond to the document requests.  A "Declaration of Counsel" signed under oath by attorney Kevin Caster sets forth a chronology of the events underlying the motion to compel.[1]  PI "changed law firms" at about that time, and Caster entered an appearance on February 18.  On the same date, Caster participated in a conference call with EIP's attorney (Glenn Johnson) regarding a discovery dispute.  It should be recalled, however, that the parties were also disputing other discovery requests, and EIP filed its first motion to compel on February 25.  It is unclear to the Court whether counsel discussed Document Requests Nos. 73 and 75, served by EIP approximately three weeks earlier.  In any event, Caster neglected to "calendar" the deadline for responding to the second set of document production requests, and failed to respond by the March 3 deadline.

According to Caster's chronology, he and Johnson exchanged emails on March 3 regarding a discovery dispute and held conference calls on March 6 and 11 regarding a discovery dispute.  A hearing was held on March 12 regarding EIP's first motion to compel, and apparently those exchanges were in relation to the issues associated with the first motion.  On March 13 — the day after the hearing — Caster "discovered the missed due date and telephoned counsel for Plaintiff to request an extension of time to respond,

---

[1] _See_ docket number 63-2.

which request was rejected by Plaintiff." Caster then sent Johnson an email on the same date, "memorializ[ing] the conversation and the objections." PI served its response to the second set of document production requests on April 4.

FEDERAL RULE OF CIVIL PROCEDURE 33(b)(4), regarding responses to interrogatories, states that "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." RULE 34, regarding production of documents, does not explicitly provide that a party waives an objection by failing to file a timely response to a request for production of documents. Nonetheless, courts addressing the issue have concluded that "the same waiver provision found in Rule 33(b)(4) applies to document requests under Rule 34." *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 424 (D. Minn. 2012). *See also Industrial Risk Insurers v. D.C. Taylor Co.*, 2008 WL 2219932 (N.D. Iowa 2008) at *4.

PI argues, however, that its failure to timely state an objection should be excused for good cause. In *Cargill*, the Court reviewed the history of the "automatic waiver provision" found in RULE 33, and noted that recent decisions concerning waiver of objections "reflect a broad exercise of judicial discretion." 284 F.R.D. at 425. Citing *Ayers v. Cont'l Cas. Co.*, 240 F.R.D. 216 (N.D.W.V. 2007), the Court identified six factors to consider in determining whether to excuse a waiver: "(1) the length of the delay; (2) the reason for the delay; (3) whether the responding party acted in bad faith or engaged in any dilatory action; (4) whether the requesting party has been prejudiced; (5) whether the request was overly burdensome; and (6) whether waiver would impose a harsh result on the defaulting party." *Id.* at 426.

In *Mills v. Iowa*, 285 F.R.D. 411, 413 (S.D. Iowa 2012), the Court observed that while "some courts have found waiver of objections when not timely made in response to a request for production, other courts have found waiver only when something beyond delay is involved." In *Cohalan v. Genie Industries, Inc.*, 276 F.R.D. 161, 164 (S.D.N.Y.

2011), the Court stated that "[g]enerally, courts will only impose waivers for tardiness under three conditions: (1) where there is no showing of good cause for the late response, (2) where a party has not responded to discovery requests despite court intervention, or (3) where a party has failed entirely to respond."

Here, there was only a short delay in PI serving its response and objections to EIP's request for production of documents. PI's attorney notified EIP's attorney on March 13 — ten days after the deadline for responding — that he had overlooked the deadline and would be filing objections to the requested production. During this time, counsel were communicating regarding other discovery disputes and PI responded to a motion to compel filed by EIP on February 25. PI was producing additional discovery during this time, and EIP was serving additional discovery requests. There is no evidence that PI was acting in bad faith or purposefully engaged in any dilatory action. Any delay in the production of the requested documents (which allegedly go to the issue of damages) does not appear prejudicial to EIP. After considering all of the circumstances, the Court, for good cause, excuses PI's failure to timely object to the supplemental document request.

### B. Sales Reports

PI has been in business since 1952. It has seven locations, six in Tennessee and one in Iowa. According to its answers to interrogatories, as confirmed in a RULE 30(b)(6) deposition, "PI manufactures various products by injection molding, vacuum forming, structural form molding, CNC steel fabrication, CNC machining, and dielectric sealing."[2] PI also owns an import business, staffing agency, and firearms manufacturing company. "PI sells product under the following trade names, Hydra Pool, Sealtech, PIPTP, GAIA,

---

[2] Deposition of James Jefferson Beene (docket number 63-4), 197:3-6.

6

PAKSTER, Rawlide, Carve/Craft. PI wholly-owned subsidiaries include HRSS, INC., Modern Muzzleloading, Inc. (Knight Rifles), and Concrete Holdings, LLC."[3]

The dispute in this case involves PI's use of the PAKSTER mark. PI manufactures and sells poultry products using the PAKSTER brand. None of PI's other businesses involve the egg industry or poultry industry, or use the PAKSTER mark.[4] In response to other discovery requests, PI has provided EIP with sales information for PAKSTER products for FYE 1998 through FYE 2013.[5] In fact, if the Court is reading the exhibit correctly, EIP would able to determine PI's total sales by referring to the "percentage of sales" used by PI to pro rate various business expenses associated with PAKSTER products, and then extrapolating from the sales of PAKSTER products.

In its Document Request No. 73, EIP asks that PI provide reports or other documents "showing the sum total sales of PI, Inc. for 2012 and for 2013." In addition, EIP asks that PI break down its sales information using eight trade names or wholly-owned subsidiaries identified by PI in its answer to interrogatories and RULE 30(b)(6) deposition. PI argues that its sales of unrelated products are irrelevant to EIP's claim of trademark infringement.

The FEDERAL RULES OF CIVIL PROCEDURE authorize broad discovery. *See* FED. R. CIV. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ."). "Discovery Rules are to be broadly and liberally construed in order to fulfill discovery's purposes of providing both parties with 'information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement.'" *Rollscreen Co. v. Pella Products*, 145 F.R.D. 92,

---

[3] *Id.*, 197:10-15.

[4] Deposition of Todd Harris (docket number 63-3), 68:10-17.

[5] *See* Sealed Response to Interrogatory No. 19 (docket number 64).

94 (S.D. Iowa 1992). While the standard to be applied is one of liberality, however, "relevancy under Rule 26 is not without bounds." *Bredemus v. International Paper Co.*, 252 F.R.D. 529, 533 (D. Minn. 2008). *See also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("At the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'") (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

Generally, the party resisting production of the requested information bears the burden of establishing lack of relevancy. *St. Paul Reinsurance Co., Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa 2000).

> The party must demonstrate to the court "that the requested documents either do not come within the broad scope of relevance defined pursuant to FED. R. CIV. P. 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.

*Id.* (quoting *Burke v. New York City Police Department*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987)). "However, when a request for discovery is overly broad on its face or when relevancy is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request." *Cunningham v. Standard Fire Ins. Co.*, 2008 WL 2902621 (D. Colo.) at *1.

EIP summarily argues that "[i]nformation regarding PI's finances should be produced as relating to EIP's actual damages claims or, at a minimum, reasonably calculated to lead to the discovery of admissible evidence regarding EIP's actual damages claims."[6] EIP fails to articulate, however, *how* financial information regarding PI's *other* businesses — which are unrelated to the poultry business or the PAKSTER mark — are relevant to EIP's actual damages in its trademark infringement action. The cases cited by

---

[6] EIP's Brief (docket number 52-1) at 4.

EIP are inapposite. For example, in *HomeVestors of America, Inc. v. LeGate*, 2013 WL 3348948 (N.D. Tex. 2013), both parties were apparently engaged solely in the purchasing of older houses.[7] The plaintiff sought to obtain the defendant's balance sheets and profit and loss statements for the past three years. The defendant was only willing to produce information "indicating revenues attributable to use, if any, of the Ugly Houses Marks." The Court ordered the defendant to produce the requested information. In *HomeVestors*, however, the defendant's entire business was apparently associated with the purchase of older homes. Similarly, in *Bob Barker Co., Inc. v. Ferguson Safety Products, Inc.*, 2006 WL 648674 (N.D. Cal. 2006), the entirety of defendant's business was in direct competition with the plaintiff.

The instant action is easily distinguishable from the cases cited by EIP. PI has a number of businesses which are entirely unrelated to the controversy over the use of the PAKSTER mark. PI's sales in those other businesses, and other information regarding the profits or losses in those businesses, has no relevance to EIP's claim of actual damages in this case. *See American Honda Mfg. Co., Inc. v. Two Wheel Corp.*, 218 F.2d 1060, 1063 (2d Cir. 1990) (describing the measure of damages in a trademark infringement claim). *See also Catipovic v. Turley*, 2013 WL 1718061 (N.D. Iowa 2013) (finding the defendants were not required to produce financial statements pertaining to unrelated businesses).

Alternatively, EIP argues that even if sales information regarding PI's unrelated businesses are not relevant to EIP's *actual* damages, it is relevant to EIP's claim for punitive damages. PI notes that punitive damages under these circumstances are a function of state law, and argues that before EIP can obtain general discovery regarding PI's total sales, EIP must establish that "sufficient admissible evidence exists to support a prima

---

[7] Plaintiff used the "WE BUY UGLY HOUSES" mark, while Defendant used the "HOUSE BUYER NETWORK" mark.

facie case" for punitive damages. *See* Iowa Code § 668A.1(3). EIP argues that federal law governs discovery under these circumstances.

It is apparently undisputed that punitive damages are not available under federal trademark law. *Minnesota Pet-Breeders, Inc. v. Schell & Kampeter, Inc.*, 843 F. Supp. 506, 519 (D. Minn. 1993). The parties disagree regarding whether treble damages may be awarded under the Lanham Act, but even *if* treble damages are available, they are based on EIP's *actual* damages. *See Coach, Inc. v. Hubert Keller, Inc.*, 911 F. Supp. 2d 1303, 1310 (S.D. Ga. 2012). Accordingly, EIP's entitlement to punitive damages, if any, is a function of state law.

Because EIP's claim for punitive damages is a function of state law, the Court concludes that Iowa Code § 668A.1(3) applies. Specifically, "[t]he mere allegation or assertion of a claim for punitive damages shall not form the basis for discovery of the wealth or ability to respond in damages on behalf of the party from whom punitive damages are claimed." Discovery of a defendant's wealth or value is not permitted "until such time as the claimant has established that sufficient admissible evidence exists to support a prima facie case" for punitive damages. As its final fall-back position, EIP asserts "it should be determined that this showing has been made." In support of its position, however, EIP offers merely argument, without any citation to the record. The Court declines at this time to make a finding of a *prima facie* case for punitive damages.

PI has previously provided EIP with 16 years of sales data relating to PI's sale of poultry products and its use of the PAKSTER mark. The Court concludes that reports or other documents "showing the sum total sales of PI, Inc. for 2012 and for 2013," including sales information broken down using eight trade names or wholly-owned subsidiaries of PI — which are entirely unrelated to the sale of poultry products or the use of the PAKSTER mark — are irrelevant to EIP's claim of actual damages. Furthermore, EIP did not establish that sufficient admissible evidence exists to support a *prima facie*

10

claim for punitive damages and, therefore, it is not entitled to discovery of PI's general "wealth or ability to respond in damages." EIP's request for documents regarding sales by PI's unrelated businesses will be denied.

## C. Tax Returns

In its Document Request No. 75, EIP asks that PI produce its corporate income tax returns for 2012 and 2013. In its brief, EIP addresses the issue of waiver and PI's refusal to comply with discovery Request No. 73, but EIP does not provide any argument or authority regarding production of income tax returns, as specified in Request No. 75. In resisting the production of its tax returns, PI argues that the information is not relevant and EIP has failed to make a showing of a "compelling need" for the returns.

There is some split of authority regarding the standard to be applied in determining the discoverability of tax returns. The two views were succinctly stated by the Court in *Terwilliger v. York Intern. Corp.* as follows:

> Courts have made it increasingly clear that tax returns in the hands of a taxpayer are not privileged from civil discovery. Nevertheless, judicial consensus exists that, as a matter of policy, great caution should be exercised in ordering the disclosure of tax returns. Unnecessary disclosure of tax returns is to be avoided.
>
> Examination of case law reveals the emergence of a judicially developed "qualified privilege ... that disfavors the disclosure of income tax returns as a matter of general federal policy." A two-prong test has been utilized to assess whether the qualified privilege should be overcome and a party's income tax returns should be disclosed. The court must determine whether (1) the tax return is relevant to the subject matter in dispute; and (2) a compelling need exists for the return, because the information sought is not obtainable from other sources. While the party seeking discovery of the tax returns bears the burden of establishing its relevance, the resisting party has the task to identify an alternative source for the information.

11

> In contrast, a minority of courts have held that the sole inquiry governing discovery of tax returns is whether the information contained in the return is relevant.

176 F.R.D. 214, 216-17 (W.D. Va. 1997) (all citations omitted).

While the Eighth Circuit Court of Appeals has not addressed this issue, it appears that most district courts in the Eighth Circuit have adopted the two-prong test described in *Terwilliger*. *See, e.g.*, *E-P Intern. Distribution, Inc. v. A & A Drug Co.*, 2009 WL 1442534 (D. Neb. 2009) (observing that "many courts require a heightened showing of relevance and necessity before ordering the disclosure" of tax returns, and that "[w]hen applying this standard, most courts use a burden-shifting test"); *Sowers v. Gatehouse Media Missouri Holdings, Inc.*, 2009 WL 1106946 (E.D. Mo. 2009) (noting that "most courts apply a two-part test"); *EEOC v. Ceridian Corp.*, 610 F. Supp. 2d 995, 997 (D. Minn. 2008) (finding that "a preponderance of authorities set out a two-part standard for deciding whether tax returns should be disclosed").

As discussed above, the gross sales (and profits or losses) from PI's numerous businesses which are unrelated to the poultry business or the use of the PAKSTER mark are not relevant to EIP's claim for damages in this trademark infringement action. It is not clear that PI's tax returns would carve out income or expenses specifically attributable to its poultry business or the sale of PAKSTER products. In any event, PI has already provided EIP with information regarding its sales and costs associated with the PAKSTER brand during the past 16 years, including the two years in question. That is, the information sought is available from another source.

As a general rule, courts do not favor compelling production of tax returns. *Johnson v. Kraft Foods North America, Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006). The heightened discovery standard found in the two-prong test is intended "to assure a balance between the liberal scope of discovery and the policy favoring the confidentiality of tax returns." *Id. See also Catipovic*, 213 WL 1718061 at *5; *PSK, LLC v. Hicklin*, 2010

12

WL 2710507 (N.D. Iowa 2010) at *1-2. EIP has failed to satisfy the two-prong test regarding production of tax returns. Accordingly, the Court will not compel PI to produce its tax returns for 2012 and 2013.

### V. ORDER

IT IS THEREFORE ORDERED that the Motion to Compel (docket number 52) filed by the Plaintiff is **DENIED**.

DATED this 21st day of May, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA